722 P.2d 685
**STATE of New Mexico**
**Plaintiff-Appellee,**

v.

**Terry D. CLARK, Defendant-Appellant.**

**No. 8673.**

Court of Appeals of New Mexico.

June 12, 1986.
Certiorari Denied July 23, 1986.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Wendy York, Asst. Public Defender, Santa Fe, for defendant-appellant.

## OPINION

GARCIA, Judge.

Defendant was charged with kidnapping and first degree criminal sexual penetration, contrary to NMSA 1978, Section 30-4-1(A) and Section 30-9-11 (Repl.Pamp. 1984). Prior to trial, defendant filed a motion to exclude all in-court identifications made by the victim. Additionally, defendant moved for a change of venue and for individual voir dire of prospective jurors. His motions were denied and at trial, evidence was presented concerning the victim's photographic identification of defendant. The victim also made an in-court identification. Defendant was convicted and he takes a timely appeal.

## ISSUES

Defendant raises issues relating to the use of hypnosis, identification and the fairness of the court's proceedings. An additional issue, appearing in his docketing statement, but not briefed, is deemed abandoned. *State v. Gammill,* 102 N.M. 652, 699 P.2d 125 (Ct.App.1985).

1.  Whether the trial court erred in permitting the "hypnotically enhanced testimony" of the victim.

2.  Whether the trial court erred in allowing the in-court identification of defendant.

3.  Whether the trial court erred in refusing to grant a change of venue.

4.  Whether the trial court erred in barring individually sequestered voir dire.

## FACTS

The victim was a six-year-old child who was abducted while walking from school. A man pulled her into a car and drove to a brushy, isolated area. The child's vagina was penetrated, probably digitally, until the child bled. The assailant pushed the child out of the car and sped away. Although bleeding profusely, the child walked approximately one mile to a house, where she sought assistance.

The police were summoned. In the child's interview with police, she described the assailant as a white man, not a boy, approximately the age of her father. She indicated the man was dressed in blue pants, a blue checked shirt and had short hair. The child identified the car as a little white and blue car with a blue interior with "baby stuff" inside. The "baby stuff" was further identified as the "stuff" babies sit in.

The child was taken to a hospital for medical care and an examination. Medical specialists confirmed that the child's vagina had been penetrated and that the child suffered first degree lacerations.

Two witnesses, who live near the scene of the crime, testified that they observed a vehicle speeding away about the time the crime was committed. One witness identi-

fied the car as a white sports car with blue stripes; the other described the vehicle as a white Camaro with Z–28 markings. The vehicle sped past one witness at approximately 3:15 p.m.

The police broadcast a description of the vehicle and were soon flooded with calls and tips. Suspicion focused on defendant, who owns a white Camaro with blue stripes and a blue interior. He has two child restraint seats in the back of his vehicle. When the police arrived at defendant's residence, they noted that the carpet and seat on the passenger side of defendant's Camaro were wet. Damp floor mats from the passenger's side were hung on a fence to dry. The carpet, seat and floor mats on the driver's side were not wet. The police took photographs of defendant and his vehicle. Additionally, they seized blue checked shirts from his home.

The two witnesses who had observed the vehicle near the scene identified the photograph of defendant's car as being similar to the car they had seen speeding away. The child, however, was unable to identify either the vehicle or the articles of clothing confiscated by police.

Further investigation indicated that defendant had not gone to work on the day of the incident. School let out at approximately 2:45 p.m. After the incident, the child walked to a house for help; she arrived at 3:15 p.m. The investigation indicated that defendant was home sometime after 4:00 p.m., when his boss arrived to visit with him. Additionally, evidence was presented that defendant's wife received a telephone call from defendant at 3:00 p.m.

Two days after the incident, the child was taken to a hypnotist to see if hypnosis could assist the child in recalling details or information which she may have forgotten or suppressed. The hypnotist was neither a psychiatrist nor a psychologist, but rather, a private investigator and polygrapher. He had no experience in forensic hypnosis and had never hypnotized a child. In two sessions, one on October 10th, the other on October 15th, he sought to induce a hypnotic state.

In both sessions, the child was frightened, agitated and uncooperative. She resisted the hypnotist's efforts. She cried and wanted to go home. The hypnotist and others present during the sessions, including individuals investigating the case, repeatedly urged the child to "let herself go" and allow herself to be hypnotized so that the police "could catch the guy."

No details of the incident were suggested to the child or discussed during the sessions. Rather, the child was told that she would remember more and more about the incident. No suggestions were made to the child, excepting that she would remember all the things she was forgetting. No photographs were shown to the child during the process, nor was the child questioned about the attack.

On October 17th, two days after the second hypnotic episode, the child was shown a photographic array consisting of nine photographs, including a photograph of defendant. The photographs were shown to the child one at a time. Defendant's was the fifth in line. As each of the first four were handed to her, the child shook her head no. As the fifth photograph was handed to her, the child shook her head indicating yes. She was asked if she was sure, and she responded yes. The remainder of the photographs were shown to the child and she reviewed them. She said, "No, that's the one," and went back to defendant's photograph.

The child subsequently made an in-court identification of defendant. Upon being asked how she knew that defendant was the one who hurt her, she replied, "I look at him." Both identifications were the subject of defendant's motion to exclude.

## HYPNOTICALLY ENHANCED TESTIMONY

*State v. Beachum*, 97 N.M. 682, 643 P.2d 246 (Ct.App.1981), is the leading New Mexico case on the admissibility of "hypnotically induced testimony." In that case, the victim of a rape and robbery identified defendant's voice in a lineup procedure, but could not make a positive visual identifica-

tion. Several weeks later, the witness was hypnotized by a police chief in a session attended by numerous individuals associated with the investigation. While in a hypnotic state, the victim was shown a photographic array which included a photograph of defendant. She identified defendant during hypnosis and again immediately after the session.

Defendant sought to exclude all of the victim's testimony, and after a hearing, the *Beachum* trial court did not allow the victim to testify to any evidence "developed from the hypnotic sessions." The trial court, however, allowed her to testify to the prior voice identification and to details of the rape and robbery.

On appeal, this court analyzed the utility of hypnosis as a tool for refreshing the memory of witnesses or crime victims. The court examined the various approaches taken by other jurisdictions and ultimately adopted an approach espoused by the New Jersey Supreme Court in *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981). In *State v. Beachum*, this court indicated that pre-hypnotic recollections could be admitted at the discretion of the court, "but post-hypnotic recollections, revived by the hypnosis procedure, are only admissible in a trial where a proper foundation has also first established the expertise of the hypnotist and that the techniques employed were correctly performed, free from bias or suggestibility." *Beachum*, 97 N.M. at 688, 643 P.2d at 252.

The *Beachum* court rejected the "per se" admissible or "per se" inadmissible approach approved by other jurisdictions. *See* Comment, *A New Standard for the Admissibility of Hypnotically Refreshed Testimony*, 63 Wash.U.L.Q. 325 (1985). *Contreras v. State*, No. 3042 (Alaska April 18, 1986); *Rock v. State*, 288 Ark. 566, 708 S.W.2d 78 (1986). Instead, this court adopted a reasoned approach which conditions the admissibility of hypnotically refreshed testimony upon adherence to procedures which make the testimony more reliable. Those procedures are contained in six guidelines fashioned by the New Jersey

Supreme Court in *State v. Hurd* and adopted in New Mexico in *State v. Beachum*.

Defendant argues that the court erred in allowing the victim to testify. He contends that her testimony was irreparably tainted by suggestions given to her during the hypnotic sessions. Relying heavily on the undisputed failure of the hypnotic procedure to conform to the *Beachum* guidelines, defendant argues that the victim's "hypnotically enhanced" testimony should have been excluded.

At the conclusion of the evidentiary hearing on defendant's motion, the court ruled that whether or not the child was under hypnosis to any degree, the identification was not made during the hypnotic session. The court determined that the testimony was not "hypnotically revived;" therefore, the *Beachum* standards did not apply. The trial court determined that the fact of the hypnotic sessions went to the weight of the child's testimony, not to its admissibility.

Our task is not to reweigh the evidence to determine whether the child was or was not hypnotized during the sessions, but only to determine whether the court's decision is supported by substantial evidence. If the trial court's determination that the identifications were not "post-hypnotic recollections revived by hypnosis" is supported by substantial evidence, then the *Beachum* requirements were not triggered. *See State v. Hutchinson*, 99 N.M. 616, 661 P.2d 1315 (1983).

Defendant cites several cases in support of his contention that the child's testimony was inadmissible. He directs our attention to *State v. Martin*, 101 Wash.2d 713, 684 P.2d 651 (1984). In that case, the witness was hypnotized because she could remember nothing of an alleged rape. During the hypnotic episode, she said that defendant had sexually abused her. Later, however, she denied the abuse.

The facts in *Martin* differ considerably from our case. Here, there was no question that a sexual assault had occurred. The victim gave police a description of her

assailant and of his car. She never denied being assaulted, and unlike the victim in *Martin,* she had independent recollection of details prior to the hypnotic episode. We note that the *Martin* decision initiated a "per se" inadmissible rule with respect to hypnotically revived testimony in Washington. New Mexico does not follow a per se exclusionary rule.

Defendant also relies on *Peterson v. State,* 448 N.E.2d 673 (Ind.1983). In *Peterson,* the victim was shown a photographic array and lineup before the hypnotic session, but was unable to identify his assailant. After hypnosis, the witness selected defendant's photograph out of an array and also identified him in open court. On appeal, the Indiana Supreme Court reversed, saying that the use of the witness's identification testimony denied defendant his sixth amendment right to confrontation and cross-examination. In *Peterson,* however, the identification of defendant could not be supported by any facts independent of the information which became available during hypnosis.

In the case at bar, defendant draws an analogy between the child's inability to identify a photograph of defendant's car, or to identify the shirt which was seized, and the *Peterson* witness's inability to identify defendant before hypnosis. In the absence of other facts, we might be persuaded by defendant's argument. However, in this case, the existence of numerous other facts causes us to reject defendant's contention. The child was able to describe her assailant by race, age, hair length, clothing, car and contents of the car. Unlike the *Peterson* witness, she did not fail to pick defendant out of a lineup or photo array. When first shown the photo array, she immediately, without hesitation, chose defendant.

Defendant's reliance on *House v. State,* 445 So.2d 815 (Miss.1981), is similarly misplaced. *House* involved the rape of an eight-year-old girl. The court held that the trial court's admission of the child's hypnotist's testimony concerning facts elicited during the session was hearsay and that the hypnotist's opinion that the victim was telling the truth was not an admissible expert opinion. They also held that the post-hypnotic testimony of the child concerning facts elicited during the session was not per se inadmissible and remanded for a determination of whether [*Beachum* -type] safeguards had been met.

Again, the facts in the case at bar differ. No details of the incident were mentioned during the hypnotic sessions. No information was sought from the child, nor were details suggested. The only suggestion made was that the child would remember. Further, in this case, there is independent, objective verification of the facts presented by other witnesses.

In many respects, this case is more akin to *Johnson v. State,* 472 N.E.2d 892 (Ind. 1985), in that the victim's identification of the assailant was not a product of the hypnotic session. In *Johnson,* the state attempted to hypnotize the victim of a rape and attempted murder. After the session, the victim provided investigators with a composite drawing that was not significantly different from a description she had previously given. No new information was obtained from the victim during the session. The trial court concluded that the victim had not been hypnotized and allowed evidence of the composite drawing. On appeal, the court concluded there was no error in the trial court's refusal to exclude the composite drawing because it was not the "product of hypnotic suggestion." *Id.,* 472 N.E.2d at 909.

The distinction between what is and what is not a product of hypnosis has been discussed in *State v. Hutchinson.* In *Hutchinson,* a witness was hypnotized four times in an attempt to help him remember the location of a murder victim's body. Details of the crime were discussed under hypnosis. There was no question that the witness was hypnotized. On appeal, defendant asserted that the trial court erred in admitting the witness's testimony because of the witness's exposure to "the unduly suggestive technique of hypnosis." *Hutchinson* at 620, 661 P.2d at 1319.

Prior to the hypnosis, the witness had given a detailed tape recorded account to his own lawyer of the events of the night in question. In upholding the trial court's ruling, the New Mexico Supreme Court cited to the distinction in *State v. Beachum* between pre-hypnotic recollections and post-hypnotic recollections revived by the hypnotic procedure. The supreme court found that because the witness's trial testimony was "essentially the same" as the account given to his attorney before hypnosis, there was no need to meet the *Beachum* requirements.

█ The circumstances of this case support a similar conclusion. The trial court determined that the child's testimony was not a post-hypnotic recollection revived by hypnosis. If there is substantial evidence to support the court's determination, then the *Beachum* requirements do not apply.

Here, in addition to the overwhelming evidence that the hypnotic procedure was inept and ineffective, we have uncontroverted testimony that no information of any kind was conveyed to, or elicited from, the child. Indeed, defendant's expert testified that his review of the videotaped hypnosis procedure indicated that the child's recollection was not prejudiced in any way.

The evidence before the court provided a substantial basis for the trial court's conclusion that the child's identification was not a product of hypnosis. On these facts, we hold that the *Beachum* standards were not applicable and that the trial court properly admitted the child's testimony.

Our ruling on this issue should not be taken as an indication of approval for the procedures utilized during the hypnotic sessions in question. To the contrary, we express deep concern about law enforcement's use of nonprofessional hypnotists and condemn the failure to adhere to basic safeguards, whether or not required for evidentiary purposes. Our concern is not only for possible evidentiary taint, but also for the physical and mental well-being of the hypnotized subject.

## PHOTO ARRAY

In addition to defendant's argument that the victim's selection of his photograph should have been excluded as the product of hypnosis, he argues that the photo array itself was impermissibly suggestive.

█ The test for suppression of an out-of-court photo identification is twofold. First, was the out-of-court photographic identification procedure so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification? Second, assuming the procedure was impermissibly suggestive, under the totality of circumstances, was the identification "reliable?" *State v. Cheadle*, 101 N.M. 282, 681 P.2d 708 (1983). An in-court identification which is independent of, and not tainted by the extra-judicial identification is admissible. *State v. Torres*, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970).

Defendant raises a variety of arguments in reference to the photographs. He contends that of the nine subjects depicted, he is clearly older than the others; he asserts that he is the only one smiling; that two photographs are taken horizontally; that one photograph is out of focus; and that each photo has distinguishing characteristics. For example, one subject is "looking up with his eyes;" another "has a dimple;" another "has a mole;" and yet another has a "menacing look."

█ We find defendant's arguments to be without merit. The photographs are all of male Caucasians of about the same age and hirsuteness as defendant. We find nothing in the photo array to indicate impermissible suggestiveness and reject defendant's cause of error on this point. *See, e.g., State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975); *State v. Brewster*, 86 N.M. 462, 525 P.2d 389 (Ct.App.1974); *State v. Armstrong*, 85 N.M. 234, 511 P.2d 560 (Ct.App.1973).

## IDENTIFICATION PROCEDURE

In addition to the claim of a suggestive array, defendant challenges the procedure utilized. Defendant's concern centers on

the fact that the case agent, Detective Berry, and the child's grandmother hugged the child after she indicated she was sure of her selection. Defendant argues that the hugs somehow tainted the identification.

■ The evidence indicates that the photo identification occurred at the grandmother's home. The detective and victim sat on the grandmother's bed; the grandmother sat on the floor. The grandmother could not see the photographs. The detective handed the victim the photos one at a time. After the child identified defendant in the array, the detective asked the victim if she was sure and she said yes. Nevertheless, the child was then told to view the rest of the photographs. She did so and went back to the first picture she had selected, that of defendant. At the conclusion of this session, both Detective Berry and the grandmother hugged the victim. The record is devoid of any suggestions, verbal or physical, made during the showing of the photo array. With this evidence, we find nothing impermissibly suggestive of the procedure utilized and find defendant's argument without merit.

## IN–COURT IDENTIFICATION

■ Defendant contends that the victim's in-court identification should have been suppressed because it was the result of an impermissibly suggestive photo array and improper hypnotic sessions. We have already determined that substantial evidence supports the trial court's conclusion that the sessions did not so affect the child's ability to identify defendant that subsequent identification must be excluded. Additionally, defendant's contention as to the impermissible suggestiveness of the photo array is without merit. The in-court identification was properly before the jury.

## WHETHER THE COURT ERRED IN REFUSING TO CHANGE VENUE

■ Defendant moved for a change in venue contending that there was an "inflammatory atmosphere" in the community that would deprive him of a fair trial. After an evidentiary hearing, the court denied the motion. Defendant did not submit any proposed findings of fact, nor did the court enter its own findings. In the absence of findings or requested findings, denial of a motion to change venue is not open for appellate review. *State v. Fernandez*, 56 N.M. 689, 248 P.2d 679 (1952). Unless specific findings are requested, the absence of findings is waived. *State v. Mosier*, 83 N.M. 213, 490 P.2d 471 (Ct.App.1971). Defendant's issue has not been preserved for appeal. *State v. Frank*, 92 N.M. 456, 589 P.2d 1047 (1979).

## WHETHER THE COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR INDIVIDUAL VOIR DIRE OF THE VENIRE PANEL

Defendant sought, by way of motion, to individually voir dire prospective jurors outside the presence of the remainder of the panel. Defendant's request was based on publicity surrounding the case and a "name-recognition" poll conducted by the public defender of a former jury panel. The trial judge denied the request for individual voir dire, stating that in his experience, the procedure had not proved helpful to the defense and, in fact, may well "innoculate" the panel with prejudicial information.

Defense counsel next requested, and the court agreed, that if any panel member indicated that he knew something about the case and wanted to discuss it privately, he would be allowed to do this. The trial judge also stated that any individual who indicated that he possessed a prior opinion as to defendant's guilt would be excused. A number of jurors were excused either because of pretrial publicity or because of the nature of the case.

■ The decision to grant or deny individually sequestered voir dire lies within the discretion of the trial court. *State v. Hutchinson*. Defendant has made no showing that the trial court acted unfairly, arbitrarily or committed manifest error. *State v. Doe*, 99 N.M. 456, 659 P.2d 908 (Ct.App.1983). Defendant's claim of re-

versible error on this point is without merit.

## SUMMARY

We conclude that there was substantial evidence to support the court's determination that the victim's testimony was not "hypnotically enhanced" and that therefore the *State v. Beachum* standards were inapplicable. We further conclude that neither the photo array nor the procedures utilized in the photo identification procedure were impermissibly suggestive. Defendant failed to preserve his claim of error relating to the court's refusal to grant a change of venue. We find no error in the court's denial of defendant's request for individual voir dire.

Finding no error, we affirm the convictions and judgment.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.