**Marietta Pamela DANIELS, a/k/a Maretha Casteel, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–86–00268–CR.**

Court of Appeals of Texas, Tyler.

April 26, 1988.

1. All statutory references are to Tex.Alco.Bev. Code Ann. (Vernon 1987) unless otherwise noted.

Randy Gilbert, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

BILL BASS, Justice.

This is an appeal from a conviction for aggravated assault. We reverse and remand.

On the night of April 11, 1985, at the Savoy Club in north Tyler, Marietta Pamela Daniels severely wounded Herbert Castleberry by shooting him twice with a .22 caliber pistol. Castleberry was drinking beer and his girlfriend was playing a video game when Daniels arrived at the club that evening. Within minutes of her arrival, Castleberry and Daniels entered into a heated discussion which quickly turned into a fight. He struck the appellant several times and threatened to kill her. After repeatedly striking her face and body, he threw her out of the club and returned to his seat at the bar. Daniels claimed that Castleberry beat her and threatened to kill her because she complained of some bad cocaine he had sold her, while Castleberry claimed that he threw her out of the club because she was harassing his girlfriend.

Not more than 30 minutes had passed after the fight when Daniels returned to the Savoy Club with a .22 caliber pistol she had taken from her mother's house. She testified at trial that she returned to the

club to look for her sister and only brought the pistol for her own safety even though she believed that Castleberry had left the bar. Upon entering the club, she spotted Castleberry and fired two shots at him as he sat on a stool at the bar. Although Daniels claimed that she shot him in self-defense in the belief that he was reaching for a pistol in his back pocket, Castleberry did not have a gun with him on the night he was shot. A jury convicted Marietta Daniels for the offense of aggravated assault and sentenced her to eight years' imprisonment. Although the appellant brings five points of error, we need only consider her fourth point.

In her fourth point of error, Daniels, a black female, claims that she was denied her constitutional right to a fair trial based on the sixth and fourteenth amendments because the prosecutor used peremptory challenges to exclude black jurors from jury service because of their race. Of the forty prospective jurors on the venire panel, six were black. The prosecuting attorney used five of his ten peremptory challenges to strike five of the six blacks from the panel. The trial judge conducted a hearing based on the appellant's objection to the racial composition of the jury. At this hearing, the prosecutor stated his reasons for striking five of the six black jurors from the panel. After the court listened to the prosecutor's reasons for each of his strikes and the appellant's contention that the State's strikes were based on race, the trial judge held that the State expressed rational and permissible reasons for striking these jurors and denied the appellant's motion for mistrial.

■■■ The State's exercise of peremptory challenges for purely racial reasons violates the Equal Protection Clause of the Constitution. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986), the United States Supreme Court recognized that a defendant may make a prima facie showing of purposeful racial discrimination in the selection of a jury by relying solely on the facts concerning the jury's selection in his case. In order to establish such a case, the defendant must show the following: (1) he is a member of a cognizable racial group, and the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire panel, (2) he is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate, and (3) these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the jury on account of their race. *Id.* at 1723.

■■■ If the trial court determines that the defendant has made a prima facie showing of discrimination, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. *Id.* While the prosecutor's explanation need not rise to the level justifying the exercise of a challenge for cause, he may not rebut the defendant's prima facie case of discrimination by merely stating that he challenged jurors of the defendant's race on the assumption that they would be partial to the defendant because of their shared race. *Id.* "The prosecutor, therefore, must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 1723–24.

Neither party challenges the trial court's finding that a prima facie case of purposeful discrimination was established by the appellant, and we find that the record supports such a finding. Therefore, we need only review the trial court's determination that the prosecutor did not use his peremptory strikes for the purpose of excluding blacks from jury service.

The prosecutor made the following explanations for his peremptory strikes: (1) he struck Carnell Gossett, Venireman No. 3, because he was inattentive, forty-two years old, had no children, and showed more interest in the defense attorney; (2) Thelma Washington, Venireman No. 12, was struck because she was chewing gum, displayed a

hateful attitude toward the prosecuting attorney by glaring at him, and she was employed by the federal government as a secretary to the Postmaster. The prosecutor believed that federal employees were more lenient on criminals than the average person; (3) he struck Alice Storks, Venireman No. 18, because she was a maid, her husband was disabled, she seemed inattentive, and she made no eye contact with the prosecuting attorney; (4) Laura McKellar, Venireman No. 19, was struck because her husband had been convicted for DWI in Smith County a week before this case, she was a party to a discrimination lawsuit, and she was a special education teacher. In support of the challenge, the prosecutor cited his opinion that teachers, like federal employees, are also more inclined to be lenient on criminals; and (5) he struck Donnie Williams, Venireman No. 30, because she seemed inattentive and she was a teacher for the Lindale Independent School District.

While we believe that the prosecutor offered a plausible, neutral explanation for the peremptory challenges of Thelma Washington, Laura McKellar, and Donnie Williams, we believe that the prosecutor's explanation for the striking of Carnell Gossett and Alice Storks falls short of the constitutional requirements expressed by the United States Supreme Court in *Batson*. The prosecutor maintained that both seemed inattentive during voir dire, that Storks made no eye contact with him, and that Gossett showed more interest in the defense attorney. The prospective jurors' inattentiveness may be a sufficiently racially neutral reason for peremptorily striking the juror. *Chambers v. State,* 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, disc. rev. ref'd). A litigant is clearly entitled to jurors who will pay attention to the trial. No problem is presented when the venireman's indifference to the proceedings is unmistakable. The use of a peremptory challenge against a black female who slept during jury selection was approved in *United States v. Ratcliff,* 806 F.2d 1253 (5th Cir.1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987). In a California case, the challenge

was allowed for inattentiveness because, among other things, the juror was reading a newspaper during voir dire. *People v. Moss,* 188 Cal.App.3d 268, 233 Cal.Rptr. 153 (1986). The difficulty is that in the ordinary case inattentiveness cannot be so easily or objectively determined.

In the instant case, the prosecutor never personally questioned either Storks or Gossett during the voir dire examination. In the absence of any direct effort by the prosecutor to engage the prospective juror's attention with individual questions, it is natural to suspect that neither the prosecutor's nor the judge's attention is sufficiently focused on each member of the panel to permit them to fairly assess or judge the panel member's "attentiveness."

*Batson* places special confidence in the trial court's ability to distinguish the legitimate racially neutral explanation from the sham reason. The trial judge has observed the voir dire examination, and his determination is entitled to deference on appeal. A reviewing "court must consider the evidence [from the *Batson* hearing] in the light most favorable to the trial judge's rulings.... If the record supports the findings of the trial judge, they will not be disturbed on appeal." *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Cr.App.1988). We must note, however, that at the time of jury selection in this case, the trial judge possessed scanty guidance from federal or state decisions on this question.

Although we are unwilling to say that a juror's demeanor cannot ever be a racially neutral motive for a prosecutor's peremptory challenge, the protection of the constitutional guarantees that *Batson* recognizes requires the court to scrutinize such elusive, intangible, and easily contrived explanations with a healthy skepticism. Otherwise, "inattentiveness" will inevitably serve as a convenient talisman transforming *Batson's* protection against racial discrimination in jury selection into an illusion and the *Batson* hearing into an empty ceremony.

In *People v. Turner,* 42 Cal.3d 711, 230 Cal.Rptr. 656, 726 P.2d 102 (1986), the

court held that striking minority jurors for such insubstantial reasons after failing to engage them in more than a cursory voir dire suggested an impermissible group bias. No examination or only perfunctory examination of the challenged juror was one of five factors held to weigh heavily against the legitimacy of a purportedly race-neutral explanation in *Slappy v. State,* 503 So.2d 350 (Fla.Dist.Ct.App.1987). Desultory voir dire and the State's use of its peremptory challenges to dismiss all or most black jurors were among two of the nine illustrative types of evidence that can be used to raise the inference of discrimination listed by the Alabama Supreme Court in *Ex parte Branch,* 526 So.2d 609 (Ala. 1987) (quoted by Texas Court of Criminal Appeals in *Keeton* ). No individual questions were asked of Storks and Gossett. The prosecutor used his peremptory challenges to eliminate five of the six black persons from the jury panel who had a chance of serving on the jury.[1] Under these facts we conclude that the explanation of inattentiveness is not a plausible, racially neutral reason to overcome the defendant's prima facie showing of purposeful discrimination.

The prosecutor also claimed that Gossett was forty-two years old with no children and Storks was a maid with a disabled husband. On cross-examination at the hearing, the prosecutor never explained why these characteristics constituted trial related reasons for peremptorily striking these two black veniremen. Unexplained personal characteristics of a venireman will not ordinarily constitute trial related racially neutral reasons for the use of peremptory challenges. Therefore, we conclude that the prosecutor failed to discharge his burden of offering a plausible, racially neutral, trial related explanation for two of the State's peremptory challenges, and that there is, therefore, insufficient evidence in the record to support the judge's finding that there was no purposeful racial discrimination by the State in its use of its peremptory challenges.

Judgment is reversed and the cause is remanded.

---

**1.** Because of double strikes, the black venireman theoretically within range was not reached