911 P.2d 891

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Reginald G. JONES, Defendant–Appellant.**

No. 15902.

Court of Appeals of New Mexico.

Nov. 30, 1995.

Certiorari granted Feb. 16, 1996.

---

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

Tom Udall, Attorney General, Daniel F. Haft, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

## OPINION

DONNELLY, Judge.

1. Defendant appeals his convictions of armed robbery and attempted armed robbery. On appeal he raises the following issues: (1) whether the prosecution's use of a peremptory challenge to remove the only Black juror who could have served on the twelve-person jury panel requires reversal; (2) whether the trial court erred in denying Defendant's motion for severance; (3) whether the State committed reversible error in failing to disclose a statement made by Defendant; (4) whether the trial court erred in denying Defendant's motion to suppress eyewitness identification; (5) Defendant's claim that the jury was improperly coerced into reaching a verdict; and (6) whether Defendant was denied effective assistance of counsel. We affirm.

## FACTUAL BACKGROUND

2. Defendant was arrested and charged with attempted armed robbery of an Allsup's Convenience Store in Hobbs, New Mexico, on November 26, 1993. Shortly after his arrest, Defendant was charged with the commission of a prior armed robbery of another Allsup's Convenience Store six days earlier on November 20, 1993. Defendant entered a plea

of "not guilty" to both offenses and the case was set for jury trial on June 13, 1994.

3. During jury selection the prosecution exercised three peremptory challenges striking two Hispanic jurors and one Black juror. The prosecution's second peremptory challenge struck Robert Tyson. Tyson was of the same racial background as Defendant.

4. Of the twenty-nine jurors whose names appeared on the jury panel, only two were Black—Tyson and Edward McBride. When the State exercised its second peremptory challenge to strike Tyson, defense counsel objected and noted that Tyson was the only Black who had a chance of serving on the panel. The other Black, Edward McBride, was chosen as an alternate.

5. After Defendant objected to the State's peremptory challenge of Tyson, the trial court requested that the prosecutor explain the reasons for exercising this challenge. The prosecutor responded that he had challenged Tyson because he had "failed to establish eye contact with the State during questioning" and because he "seemed not to be possessed of a certain degree of assertiveness which the State prefers to have in jurors."

6. The trial court overruled Defendant's objection to the State's peremptory challenge of Tyson, stated that the prosecutor had given a reasonable explanation for exercising its peremptory challenge, and upheld the State's peremptory challenge.

## I. THE PEREMPTORY CHALLENGE

7. Defendant, relying in part on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its New Mexico progeny, argues that the trial court erred in permitting the State's use of a peremptory challenge on Tyson, and asserts that the reasons articulated by the State for the challenge failed to overcome Defendant's prima facie showing that the challenge was racially motivated. In advancing this claim, Defendant also relies on the Equal Protection Clauses of both the New Mexico Constitution and the United States Constitution.

8. In *State v. Sandoval,* 105 N.M. 696, 699, 736 P.2d 501, 504 (Ct.App.1987), this Court observed that

although a prosecutor ordinarily is entitled to exercise peremptory challenges for any reason as long as that reason is related to his view concerning the outcome of the case to be tried, [the United States Supreme Court, in *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719 has held,] "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of·their race or on the assumption that [jurors of the same race] as a group will be unable impartially to consider the State's case against [the] defendant."

Similarly, in *State v. Gonzales,* 111 N.M. 590, 595, 808 P.2d 40, 45 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991), this Court recognized that a prosecutor's intentional use of a peremptory challenge to strike a juror for reasons of race violated the defendant's right to an impartial jury guaranteed by Article II, Section 14 of the New Mexico Constitution. The *Gonzales* Court, relying on Article II, Sections 14 and 18 of the New Mexico Constitution, also held that such provisions preclude the state from using its peremptory challenges to strike jurors in criminal cases because of their gender. *Id.* at 598, 808 P.2d at 48.

9. In order to make a prima facie showing that a prosecutor's exercise of a peremptory challenge was racially motivated (the first step in the *Batson* trilogy), Defendant must show that

(1) he is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; (3) these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members of the panel solely on account of their race.

*Id.* at 596, 808 P.2d at 46 (quoting *State v. Goode,* 107 N.M. 298, 301, 756 P.2d 578, 581 (Ct.App.), *cert. denied,* 107 N.M. 308, 756 P.2d 1203 (1988)). Whether Defendant has made a prima facie case of purposeful discrimination constitutes a factual question. *State v. Moore,* 109 N.M. 119, 126, 782 P.2d 91, 98 (Ct.App.), *cert. denied,* 109 N.M. 54,

781 P.2d 782 (1989). The State concedes that Defendant satisfied the first two steps necessary to establish a prima facie showing that the challenge was racially motivated. It argues, however, that

[e]ven assuming, *arguendo,* that Defendant satisfied the third element of his prima facie case and ... the first step of the *Batson* inquiry, [he] nevertheless failed to prove—in the third and final step of the inquiry—that the ... prosecutor's asserted reason for the strike was pretextual and therefore racially motivated.

■ 10. After reviewing the record in light of the test articulated in *Batson* and *Sandoval,* we agree with Defendant that his trial counsel made a prima facie showing that the State violated the Equal Protection Clauses of both the New Mexico Constitution and the United States Constitution. *See Goode,* 107 N.M. at 301, 756 P.2d at 581 (showing that state's challenge had eliminated the only member of the defendant's race from the jury raises inference of racial discrimination). A prima facie showing of discrimination, however, does not terminate the judicial inquiry.

■ 11. Once Defendant has made a prima facie showing of racial discrimination, the prosecution is then required to justify its use of the peremptory challenge by showing that the challenge was grounded upon a specific good-faith, racially neutral reason. *Id.* As observed in *Batson,* the explanation given by the prosecution must be facially (1) neutral, (2) related to the case in issue, (3) supported by clear and reasonably specific reasons, and (4) legitimate (the second step in *Batson* ). *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24. Implicit in the holding of *Batson,* and subsequent New Mexico decisions that have followed in *Batson*'s wake, is the requirement that the trial court satisfy itself with the legitimacy of the prosecution's explanation. This is the third step in the *Batson* process. When a prima facie showing of discrimination has been made by the party opposing the challenge, and the other party responds with an explanation which is at least facially neutral, then in the third *Batson* step the trial court must carefully scrutinize the reason given for the use of the challenge. Any automatic approval of any nonracial explanation for the exercise of a peremptory challenge, irrespective of the legitimacy of such assertion, would undermine the central rationale of *Batson* that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [jurors of the same ethnic background] as a group will be unable impartially to consider the State's case against [the] defendant." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. A "legitimate reason" is a reason that does not deny equal protection. *Purkett v. Elem,* — U.S. —, —, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (citing *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)).

■ 12. In evaluating the reasons advanced for the use of a peremptory challenge (the third step), the trial court may not merely accept the State's proffered reasons, but must consider such explanations based on all of the surrounding circumstances and determine whether the reasons advanced are genuine and reasonable. *Gonzales,* 111 N.M. at 597, 808 P.2d at 47; *Goode,* 107 N.M. at 302, 756 P.2d at 582. On appeal, we review claims that a peremptory challenge was motivated by race or gender reasons under an abuse of discretion standard. *See State v. Arteaga,* 257 Kan. 874, 896 P.2d 1035, 1040 (1995). The trial court's determination of whether Defendant has carried his burden of showing that the State has intentionally discriminated on the basis of race or gender is a finding of fact which will not be overturned on appeal if supported by substantial evidence. *Gonzales,* 111 N.M. at 597, 808 P.2d at 47; *Goode,* 107 N.M. at 302, 756 P.2d at 582. In determining the validity of the explanation given, the trial court may properly assess whether other venirepersons of a different gender or ethnic background from that of Defendant and the juror in question were struck for the same or similar reasons. *Gonzales,* 111 N.M. at 596, 808 P.2d at 46; *Goode,* 107 N.M. at 302, 756 P.2d at 582; *see also State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150, 1168 (1986).

13. In *Purkett* the United States Supreme Court, in a per curiam decision, re-

cently revisited and clarified the procedure for evaluating the validity of peremptory challenges exercised by the prosecution in criminal cases. The Court reiterated its three-step analysis applicable in such cases, and held:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Id.,* —— U.S. at ——, 115 S.Ct. at 1770–71 (citations omitted) (quoting *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866).

■ 14. The *Purkett* Court observed that it was not until the third step in the process "that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* at ——, 115 S.Ct. at 1771. Although acknowledging that implausible or fantastic justifications may be offered as a pretext for purposeful discrimination, the Court held that the "burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* Under *Purkett,* unless the reason given by the party exercising the strike is facially shown to be racially motivat-

ed or is determined to be legally insufficient as a matter of law, resolution of the genuineness of the motive of the party asserting the challenge turns "primarily on [the trial court's] assessment of credibility." *Id.* at ——, 115 S.Ct. at 1772.

■ 15. Implicit in the provisions of Article II, Sections 14 and 18 of our state constitution is a requirement that when a prima facie showing of racial or gender discrimination has been made, the party interposing a peremptory challenge in a criminal case must come forward and explain the reason for exercising such strike which is race or gender neutral, reasonably specific, and trial related. *See State v. Aragon,* 109 N.M. 197, 201–02, 784 P.2d 16, 20–21 (1989); *see also State v. Butler,* 731 S.W.2d 265, 269 (Mo.Ct. App.1987).

■ 16. In evaluating the explanation given for the exercise of the peremptory challenge, it is the duty of the trial court to consider the reason advanced and to determine whether, considering all the facts and circumstances, the party opposing the challenge has carried his burden of establishing "purposeful discrimination." *See Moore,* 109 N.M. at 126, 782 P.2d at 98. In order to evaluate the factual basis behind a peremptory challenge, both the trial court and this Court on appeal are restricted to the matters contained in the record. Because the trial court's decision is largely fact-based, a reviewing court will sustain the trial court's findings unless they are unsupported by substantial evidence or constitute an abuse of discretion. *Gonzales,* 111 N.M. at 597, 808 P.2d at 47; *Arteaga,* 896 P.2d at 1040.[1]

■ 17. Defendant for the first time on appeal cites case precedent from other jurisdictions questioning the efficacy of peremptory challenges of prospective jurors of the same racial background of Defendant and

---

1. As observed in *Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1869:

   In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." *Wainwright v. Witt,* 469 U.S. 412, 428 [105 S.Ct. 844, 854, 83 L.Ed.2d 841] (1985), citing *Patton v. Yount,* 467 U.S. 1025, 1038 [104 S.Ct. 2885, 2892, 81 L.Ed.2d 847] (1984).

which are based on nothing more than lack of eye contact, body language, inattentiveness, and subjective intuition. Defendant points to cases that have rejected these same justifications because they are too easily contrived or because they are incapable of objective confirmation. *See, e.g., Butler,* 731 S.W.2d at 271–72 (lack of eye contact and allegation that juror stared at the floor held insufficient where prosecutor did not question juror); *C.E.J. v. State,* 788 S.W.2d 849, 857 (Tex.Ct. App.1990) (lack of eye contact and inattentiveness invalid reasons where the prosecutor asked no questions); *Daniels v. State,* 768 S.W.2d 314, 317 (Tex.Ct.App.1988) (prosecutor's claim that juror was inattentive and did not make eye contact was particularly suspect and invalid because the prosecutor never questioned the juror)[2]; *cf. Goode,* 107 N.M. at 302, 756 P.2d at 582 (failure to question challenged juror may indicate justifications for peremptory challenge are not genuine).

18. In the case before us, after the prosecutor offered a facially neutral reason for the challenge (lack of eye contact; lack of assertiveness), the burden lay with Defendant to persuade the trial court that the prosecutor's explanation was not neutral after all, but only a pretext for discriminatory purposes. *Purkett,* —— U.S. at ——, 115 S.Ct. at 1771. In the instant case defense counsel did not challenge the veracity of the prosecutor's claim that Tyson did not make eye contact. Instead, counsel criticized the prosecutor and complained that the prosecutor's reasons were too "subjective." Other than offering his own personal opinion, defense counsel offered no evidence or legal argument to rebut the prosecutor's reasons. Thus, the trial court could reasonably conclude that Defendant did not carry his burden of proof.

19. Under the circumstances presented here and the record before us, we cannot say that the State's reasons for challenging Ty-

son constituted "purposeful discrimination" or were unsupported by substantial evidence. Based on this limited record, the trial court overruled the objection to the challenge, and on the basis of that same record, we affirm the trial court's ruling on this issue.

## II. *MOTION FOR SEVERANCE*

20. Defendant's claims that the trial court erred in rejecting his motion for severance of the two alleged offenses. We discern no error in this ruling. We review a claim of error for denial of a motion to sever under an abuse of discretion standard. *State v. Pacheco,* 110 N.M. 599, 604, 798 P.2d 200, 205 (Ct.App.), *cert. denied,* 110 N.M. 533, 797 P.2d 983 (1990). Under SCRA 1986, 5–203 (Repl.1992) (effective August 1, 1992), a motion for severance may be granted if it appears that either the defendant or the state may be prejudiced by a joinder of offenses.

21. Each of the offenses charged in the criminal information involved either the alleged robbery or attempted robbery of different Allsup's Convenience Stores in Hobbs. Evidence tending to establish that Defendant committed separate criminal offenses on different dates and at different locations is admissible if such evidence is offered to prove motive, opportunity, intent, preparation, plan, knowledge, or identity. SCRA 1986, 11–404(B) (Repl.1994); *see also State v. Griffin,* 116 N.M. 689, 693, 866 P.2d 1156, 1160 (1993). At trial, the State presented evidence tending to show that the two offenses were committed in a similar manner and by a single individual. The testimony concerning the attempted robbery showed that a store clerk activated a silent alarm and that city police officers promptly responded. Several officers testified that they observed Defendant during the commission of the attempted robbery. Detective Robert Watts testified that the similarity in the manner of the commission of this offense and the physi-

---

**2.** In *Daniels,* the Texas Court of Appeals noted:

Although we are unwilling to say that a juror's demeanor cannot ever be a racially neutral motive for a prosecutor's peremptory challenge, the protection of the constitutional guarantees that *Batson* recognizes requires the court to scrutinize such elusive, intangible, and easily contrived explanations with a healthy

skepticism. Otherwise, "inattentiveness" will inevitably serve as a convenient talisman transforming *Batson* 's protection against racial discrimination in jury selection into an illusion and the *Batson* hearing into an empty ceremony.

*Id.,* 768 S.W.2d at 317.

cal description given by a store clerk in the earlier offense led the police to suspect that Defendant was the same individual who had committed the robbery of another Allsup's Convenience Store six days earlier.

■ 22. Absent a showing of prejudice, it is not error for the trial court to permit evidence of the commission of separate offenses where the charged offenses were of similar character, were perpetrated in a similar manner, and were closely related in point of time. *State v. Burdex*, 100 N.M. 197, 204, 668 P.2d 313, 320 (Ct.App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983).

## III. *DEFENDANT'S STATEMENT*

■ 23. Defendant contends that the trial court erred in failing to grant a mistrial when Officer J. Palmer testified that, when Defendant exited from the Allsup's store moments before his arrest, he stated, "It's not me—it's the other guy inside." At the time Defendant made this statement, the only other person inside the building was the store clerk. Defense counsel argues that Defendant's statement was never disclosed and its use prejudiced his defense.

24. The trial court overruled Defendant's motion for a mistrial and found that the prosecutor had not intentionally withheld disclosure of the statement, that the statement did not appear in any of the written police reports, and that the State was unaware of the oral statement until a conference the Friday prior to trial when it was briefly mentioned. The trial court agreed to admonish the jury to disregard the statement and to preclude any future reference to the statement. Following this ruling, defense counsel told the trial court he did not want the jury admonished because he feared that it would only draw more attention to the statement.

25. Our Supreme Court, in *State v. Sandoval*, 99 N.M. 173, 175, 655 P.2d 1017, 1019 (1982), recognized a three-part test for determining whether the State's failure to disclose a statement made by the defendant requires reversal of the defendant's conviction. First, inquiry must be made as to whether the State breached a duty or intentionally deprived the defendant of access to the evidence. Second, whether the evidence was material. Third, whether the suppression or failure to disclose the evidence prejudiced the defendant. When the evidence is introduced at trial, the court must also consider whether the failure to timely disclose the evidence was cured by the trial court. *Id.*

■ 26. Here, the trial court found that the State's failure to disclose the evidence was not intentional, and the trial court offered to admonish the jury and bar any future reference to the statement so as to ameliorate any potential prejudice resulting from the State's lack of disclosure. Under these circumstances, we do not believe the failure to disclose rose to the level of prejudicial error. Moreover, in view of the evidence indicating that Defendant was observed exiting from the store, was arrested at the scene, and was identified by eyewitnesses as the person who committed each of the charged offenses, even if we were to assume, arguendo, that the admission of such evidence was error, such error was harmless, particularly in light of the trial court's offer to admonish the jury. *State v. Williams*, 117 N.M. 551, 559, 874 P.2d 12, 20 (1994).

## IV. *DENIAL OF MOTION TO SUPPRESS*

■ 27. Defendant argues that the trial court erred in denying his motion to suppress his out-of-court photographic identification by the Allsup's store clerk, Teresa Stidham. After examining a photographic array, Stidham named Defendant as the perpetrator of the November 20, 1993, robbery of the Allsup's Convenience Store.

28. Officer Watts prepared an array of six photographs which contained a photograph of Defendant. Stidham picked Defendant's photograph and stated that it looked a great deal like the person who committed the robbery but that she could not be sure from the photograph. Officer Watts later obtained two Polaroid photographs of Defendant and gave them to the witness to examine. At this point, Officer Watts testified that Stidham told him that Defendant was the person who had robbed her.

29. Stidham testified at trial that when she first saw Defendant's photograph in the photo array, the photograph was not very clear. She stated she had a clear view of Defendant in the store at the time of the robbery, and upon her examination of the Polaroids she was certain that Defendant was the same person who committed the robbery.

30. As observed in *State v. Clark*, 104 N.M. 434, 439, 722 P.2d 685, 690 (Ct. App.), *cert. denied*, 104 N.M. 378, 721 P.2d 1309 (1986), the test for determining whether an out-of-court photographic identification was conducted in a manner so as to become impermissibly suggestive, involves a two-part inquiry: (1) was the photographic identification procedure conducted in a manner so as to give rise to a substantial likelihood of "irreparable misidentification"; and (2) whether, under the totality of the circumstances, was the identification " 'reliable?' " Applying this test to the facts herein, we find no error in the admission of this evidence or in the trial court's ruling denying the motion to suppress.

## V. *JURY DELIBERATIONS*

31. Defendant argues that the trial court erred in permitting the jury to begin its deliberations at the conclusion of the one-day jury trial. Defendant asserts this action improperly coerced the jury into reaching a verdict. We find this issue without merit. Defendant failed to voice any objection regarding the trial court's instructions to the jury or the timing of its deliberations. *See State v. Duncan*, 117 N.M. 407, 414, 872 P.2d 380, 387 (Ct.App.) (to preserve error for review on appeal, appellant must fairly invoke a ruling from the trial court on the same ground argued on appeal), *cert. denied*, 117 N.M. 524, 873 P.2d 270 (1994).

## VI. *CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL*

32. Defendant's final contention asserted on appeal is that his trial counsel was ineffective for failing to object to the trial court's directive to the jury that it commence its deliberations following the giving of the instructions. Defendant also asserts that his counsel was ineffective because he failed to fully present additional arguments in support of his motion for severance. We disagree.

33. Although defense counsel did not object to the trial court's directive that the jury commence its deliberations following the reading of the instructions and closing arguments, the actions of the trial court cannot be said to have resulted in a verdict that favored either the defense or the prosecution. Nor can defense counsel's effectiveness be judged entirely by hindsight. *See State v. Richardson*, 114 N.M. 725, 727, 845 P.2d 819, 821 (Ct.App.) (in considering a claim of ineffective assistance, we consider the entire proceeding as a whole), *cert. denied*, 114 N.M. 550, 844 P.2d 130 (1992). Our review of the record indicates that defense counsel acted in a vigorous and competent manner throughout the trial, timely requested separate trials for the two offenses, and, although he was initially cut off in presenting his argument for severance, he later supplemented his motion with an additional ground.

## *CONCLUSION*

34. We have examined all of Defendant's arguments on appeal and have found no reversible error. The judgment and sentences of the trial court are affirmed.

35. IT IS SO ORDERED.

ALARID, J., concurs.

BOSSON, J., specially concurs.

BOSSON, Judge, specially concurring.

I write specially, while fully embracing what has been said by my colleagues, to emphasize the critical roles of the trial court and defense counsel in putting the prosecutor's "facially neutral" explanation to the test. As a practical matter, the *Batson* line of cases, with *Purkett* as the latest voice, place a heavy responsibility on the skills of defense counsel to flesh out the prosecutor's proffered explanation and see if it can stand the light of day. So too, the trial court must display a healthy skepticism and permit counsel sufficient latitude to do a job which is now harder than ever.

The trial court should be concerned when a peremptory challenge, otherwise subject to prima facie *Batson* objection, is so dependent upon subjective intuition. The trial court should closely scrutinize any such rationale, all the while being on the watch for pretextual behavior masking illegitimate motive. It is not just the repulsive racist who, for the sake of winning, selects a jury according to strategic and tactical considerations that are discriminatory, whether intended or not. *See Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App.1988) (en banc) (although not intentionally discriminating, an attorney may for strategic reasons try to find reasons other than race to challenge a black juror, when race may really be the primary factor).

A number of court decisions have declined to strike peremptory challenges based on similar grounds such as body language, eye contact and the like. *See United States v. Bentley–Smith,* 2 F.3d 1368, 1374 (5th Cir. 1993) (per curiam) (eye contact); *United States v. Cartlidge,* 808 F.2d 1064, 1070–71 (5th Cir.1987) (recognizing lack of eye contact with prosecutor as valid reason for strikes); *see also Harper v. State,* 635 So.2d 864, 868 (Miss.1994) (eye contact); *State v. Bronson,* 242 Neb. 931, 496 N.W.2d 882, 893 (1993) (recognizing that body language and eye contact may be valid reasons for strikes); *State v. Holley,* 604 A.2d 772, 778 (R.I.1992) (same). *See generally* Eric N. Einhorn, *Batson v. Kentucky and J.E.B. v. Alabama ex rel. T.B.: Is the Peremptory Challenge Still Preeminent?,* 36 B.C.L.Rev. 161, 187–96 (1994) (cataloguing cases affirming peremptory challenges on subjective grounds). Peremptory challenges based on such grounds are surely not automatically invalid. We do caution trial courts to hold these and similar reasons up to the stark, revealing light of exacting scrutiny. *See United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989) (despite "great deference" to the district judge, decision reversed where explanation for peremptory challenge was not sufficiently clear and specific and therefore inadequate); *see also Batson v. Kentucky,* 476 U.S. 79, 106, 106 S.Ct. 1712, 1728, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring) (expressing anxiety that facially neutral explanations sim-

ilar to this case may render illusory the *Batson* protections against discrimination).

Some of the objections put forth on this appeal may prove to be useful tools for trial courts in ferreting out discriminatory purpose. For example, if a juror with supposedly averting eyes is not questioned individually, the trial court may well be incapable of making a factual finding one way or another on that issue. Without a finding of fact in support, it may follow that the juror challenge should fail, particularly where coupled with a prima facie case of suspicious use of the challenge. *C.E.J. v. State,* 788 S.W.2d 849, 857 (Tex.Ct.App.1990) ("No examination or only a perfunctory examination of the challenged juror by the State weighs heavily against the legitimacy of a facially race-neutral explanation and may illustrate sham or pretext."). After all, a conscientious court cannot simply take the proponent's word for it. *State v. Goode,* 107 N.M. 298, 302, 756 P.2d 578, 582 (Ct.App.), *cert. denied,* 107 N.M. 308, 756 P.2d 1203 (1988). To merit a deferential standard of review, the trial court must actually perform the fact-finding function and exercise that degree of healthy skepticism deserving of the "special confidence" which is reposed in the trial court's ability to distinguish sincerity from sham. *Daniels v. State,* 768 S.W.2d 314, 317 (Tex. Ct.App.1988); *see also State v. Aragon,* 109 N.M. 197, 202, 784 P.2d 16, 21 (1989) (trial court's scrutiny must demand an "articulate and explicit substantiation"); *State v. Gonzales,* 111 N.M. 590, 600, 808 P.2d 40, 50 (Ct.App.) (trial court must make "an informed decision" based on all the facts), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991); *State v. Moore,* 109 N.M. 119, 126, 782 P.2d 91, 98 (Ct.App.) ("If the constitutional guarantee articulated in *Batson* is to have real meaning, the trial court must play a primary role."), *cert. denied,* 109 N.M. 54, 781 P.2d 782 (1989).

In the case before us, it is questionable whether the prosecutor's rationale underwent sufficient scrutiny. On appeal, Defendant raises intriguing questions for our consideration. However, the burden remains with the opponent to make a record. Here, upon receiving the *Batson* objection, the trial

court expressly requested guidance of counsel on how to proceed, even to the point of asking whether findings of fact were necessary. Defense counsel acquiesced in the court's actions. Defense counsel made no effort to raise any of the interesting positions Defendant now posits on appeal. For example, we have no way of knowing whether the suspect juror, Mr. Tyson, averted eye contact or not. Counsel could have asked the court either to confirm or deny that fact, and if the court could not do so because the juror was not questioned individually, this would weigh heavily against the validity of the challenge. We do not know whether any other jurors, not challenged, displayed similar idiosyncrasies. The court was not asked to take notice of any such behavior. The record is all too silent.