2000-NMCA-017

998 P.2d 1203

### STATE of New Mexico, Plaintiff–Appellee,

v.

### Nathan SANTILLANES, Defendant–Appellant.

No. 19,000.

Court of Appeals of New Mexico.

Jan. 10, 2000.

Certiorari Granted, No.26,170, March 3, 2000.

Certiorari Denied, No. 26,173, April 4, 2000.

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Christopher Bulman, Chief Appellate Defender, Santa Fe, for Appellant.

*OPINION*

APODACA, Judge.

{ 1}  In this appeal, we address whether a defendant can be punished for a single death under two different statutes.  Under the specific facts of this appeal, we answer that question negatively.  Defendant appeals his convictions of five counts of vehicular homicide, contrary to NMSA 1978, § 66–8–101 (1991), and four counts of child abuse resulting in death, contrary to NMSA 1978, § 30–6–1(C) (1997), along with driving while intoxicated (DWI) and other related offenses.  Defendant's convictions resulted from a traffic accident in which five persons were killed, four of them children.  Defendant contends that the vehicular homicide and child abuse convictions violated the prohibition against double jeopardy.  He also raises other issues involving the sentence he received for the vehicular homicides, merger of the DWI conviction, the jury instructions on reckless driving, the change of venue, and instructions on causation relating to the vehicular homicide charges. We affirm the vehicular homicide convictions but reverse on the double jeopardy and merger issues.  We therefore remand to the trial court to (1) vacate the convictions for child abuse resulting in death and DWI and (2) resentence Defendant.  We affirm on all other issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{ 2}  On the day of the accident giving rise to the criminal charges, Defendant was driving a motor vehicle.  His girlfriend and four children were in the vehicle with him. As Defendant approached an intersection where he was going to make a left-hand turn, he saw a truck "quite a ways off."  He proceeded through the intersection.  The truck, which was traveling much faster than the posted speed limit, hit Defendant's vehicle, killing everyone in the vehicle but Defendant.  Evidence established that Defendant had a blood alcohol level of .15 at the time of the accident.  The blood alcohol level of the other driver was .23.  Defendant admitted to drinking as much as a six-pack of beer that day.  There was an open container of beer found in the vehicle after the crash.  He also admitted to smoking marijuana that morning and having taken cocaine the night before. The cocaine was detected in Defendant's blood.  We include additional facts in our discussion of the issues.

## II. DISCUSSION

### A. Double Jeopardy

{ 3}  Defendant was convicted of nine homicide crimes—five counts of vehicular homicide and four counts of child abuse resulting in death.  He contends these convictions impermissibly subject him to multiple punishment for four of the five deaths caused by the accident.  *See* U.S. Const. amends. V, XIV, N.M. Const. art. II, § 15.  Defendant raises this issue for the first time on appeal.  *See* NMSA 1978, § 30–1–10 (1963) (providing that the "defense of double jeopardy ... may be raised by the accused at any stage of a criminal prosecution").

{ 4}  In cases involving multiple punishment, we apply a two-step process.  *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991).  We first must determine whether a defendant's conduct was unitary. If it was not, then there is no double jeopardy violation and our analysis ends.  *See State v. Livernois*, 1997–NMSC–019, ¶ 19, 123 N.M. 128, 934 P.2d 1057.  If the conduct was unitary, however, then we must consider whether the legislature intended to create separately punishable offenses.  In determining whether conduct is unitary, we "inquire into whether [the] 'two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred) ... [or whether] the quality and nature of the acts or ... the objects and results involved' can be distinguished."  *Id.* ¶ 20 (quoting *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34 (second and third alterations in original)).

{ 5}  In this appeal, we must inquire whether we can distinguish between the acts leading to the convictions for vehicular homicide and child abuse resulting in death.  The vehicular homicide charges were based on the fact that Defendant was driving under the influence of alcohol and drugs and that

his actions caused the deaths. Concerning the criminal charges of child abuse resulting in death, it was the State's theory and contentions at trial that, by driving while he was intoxicated, Defendant placed the children in a dangerous situation that resulted in their deaths. In our view, therefore, the same conduct of driving while intoxicated was used by the State to establish both vehicular homicide and child abuse resulting in death.

{ 6} The State argues on appeal, however, that the conduct constituting the vehicular homicide and the conduct of child abuse resulting in death were distinguishable. It contends that the child abuse committed by Defendant was allowing the children to enter the vehicle, thus placing them in a situation that endangered their lives. It also argues that the crash and death occurred later but that the abuse had already taken place. We disagree. The Supreme Court in *Swafford* clearly stated that "[t]ime and space considerations ... cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved." 112 N.M. at 14, 810 P.2d at 1234. Here, Defendant was intoxicated and drove with four children in his vehicle. He was involved in an accident that caused the deaths of the children. By focusing on the nature of the acts and the results involved here, we conclude that the conduct underlying the vehicular homicide charges and the conduct underlying the child abuse resulting in death charges were the same. The conduct was therefore unitary.

{ 7} Having determined that the conduct was unitary, we must proceed to determine whether the Legislature intended to create separately punishable offenses for such conduct. In the absence of an express declaration of such intent, we must compare the statutory elements of the different statutes and determine whether one crime requires proof of a fact that the other does not, or whether one is subsumed by the other offense. *See State v. Carrasco*, 1997–NMSC–047, ¶ 23, 124 N.M. 64, 946 P.2d 1075. Here, the statutes stand independently of one another, and neither subsumes the other because the charge of child abuse resulting in death requires only the death of a child and vehicular homicide requires that the death occur as a result of a defendant driving a vehicle while intoxicated. Consequently, because the two statutes stand independently, there is a rebuttable presumption in favor of multiple punishment. *See id.* That presumption may be overcome by some other indicia of legislative intent, such as the language, history, and subject of the respective statutes. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{ 8} In this appeal, we believe that the presumption is rebutted by the generally accepted notion that one death should result in only one homicide conviction. *See State v. Cooper*, 1997–NMSC–058, ¶ 53, 124 N.M. 277, 949 P.2d 660; *State v. Pierce*, 110 N.M. 76, 86, 792 P.2d 408, 418 (1990). " 'The means of committing an offense may not be [used] to multiply the number of offenses committed.' " *State v. Landgraf*, 1996–NMCA–024, ¶ 31, 121 N.M. 445, 453, 913 P.2d 252, 260 (quoting *Carter v. State*, 424 N.E.2d 1047, 1048 (Ind.Ct.App.1981)). Thus, even if the cause of death satisfied the elements of two or more statutory offenses, there is nonetheless only one death. In context of the two statutes, it is the death of another that the Legislature intended to punish, not the manner in which it was accomplished. We do not believe that the Legislature intended multiple homicide convictions for one death. We thus hold that Defendant's convictions and sentences for both vehicular homicide and child abuse resulting in death violated his right to be free from double jeopardy.

{ 9} When this violation occurs, the general rule requires that the lesser offense be vacated. *See Pierce*, 110 N.M. at 86–87, 792 P.2d at 418–19. In this instance, the vehicular homicide conviction is the lesser offense (a third-degree felony, compared with child abuse resulting in death, a first-degree felony). Defendant argues, however, that this case requires a different result. He contends that under the general-specific rule, we should vacate the child abuse convictions rather than the vehicular homicide convictions because the vehicular homicide statute is the specific statute. The general-specific rule states that if one statute deals with a subject in general and comprehensive terms,

and another statute addresses part of the same subject matter in a more specific manner, the latter controls. *See State v. Cleve,* 1999–NMSC–017, ¶ 17, 127 N.M. 240, 980 P.2d 23. Additionally, if both a general and a specific statute address the same criminal conduct, the specific statute should govern " 'to the extent of compelling the state to prosecute under it.' " *Id.* (quoting *State v. Blevins,* 40 N.M. 367, 369, 60 P.2d 208, 210 (1936)).

{ 10} In *Cleve,* 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23, our Supreme Court clarified the applicable test for ascertaining whether two different statutes come within the purview of the general-specific rule. The Court stated that a comparison of the statutory elements of the two laws that address the same subject matter is not the sole relevant factor in determining whether the rule applies. Rather, the focus should be

> on whether the Legislature intended that the specific law operate as an exception to the general law and whether the Legislature intended that certain criminal conduct be charged under one special law to the exclusion of other more general laws. This inquiry may include the elements of the crimes, the language of the statutes, the histories and purposes of the statutes, and other relevant indicia of legislative intent.

*Id.*

{ 11} Applying these rules to this case, we believe that the Legislature intended that the vehicular homicide statute, Section 66–8–101, be the applicable statute governing child abuse resulting in death, where the death was caused by the operation of a vehicle while intoxicated. *See State v. Guilez,* 1999–NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206 (reckless driving statute controls over child abuse statute where the conduct involves operation of a motor vehicle) *cert. granted,* 128 N.M. 150, 990 P.2d 824 (1999). The Legislature's enactment of a comprehensive Motor Vehicle Code, NMSA 1978, §§ 66–1–1 to –12–23 (1978, as amended through 1999), indicates to us "a legislative intent to preempt the field." *State v. Yarborough,* 1996–NMSC–068, ¶ 27, 122 N.M. 596, 930 P.2d 131; *see also Guilez,* 1999–

NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206, *cf. State v. Arellano,* 1997–NMCA–074, ¶¶ 10–13, 123 N.M. 589, 943 P.2d 1042 (in case not involving operation of motor vehicle, criminal damage to property statute also applied to damage to motor vehicles). Thus, where two statutes prohibit the same conduct and one involves the operation of a vehicle, the crime described in the Motor Vehicle Code is the specific offense and is the law that the State is compelled to prosecute under.

{ 12} We believe there are additional indicia of legislative intent supporting this result in other parts of the Motor Vehicle Code. For example, Section 66–8–101.1(C), concerning injury to a pregnant woman by vehicle, states that, where the injury by a drunk driver causes the woman to suffer a miscarriage or stillbirth, the crime is a third degree felony. The death of an adult resulting from DWI is likewise a third degree felony. *See* Section 66–8–101(C). We do not believe that the Legislature intended that the death of a child between birth and eighteen years of age should result in different and considerably greater punishment than the death of an unborn child or an adult, when the conduct causing the death, driving while intoxicated, is the same.

{ 13} We conclude that the vehicular homicide statute controlled the conduct here that resulted in the deaths of four children. For this reason, the four convictions for child abuse resulting in death must be vacated.

**B. Sentence for Vehicular Homicide**

{ 14} Defendant was given a six-year basic sentence for each of the vehicular homicides. He contends that the proper basic sentence was three years. We recently determined that the basic sentence for vehicular homicide is six years. *State v. Guerro,* 1999–NMCA–026, ¶ 12, 126 N.M. 699, 974 P.2d 669. We decline to revisit that holding.

**C. Merger of DWI and the Vehicular Homicide Charges**

{ 15} The basis for the vehicular homicide convictions was the DWI. The State concedes that the sentence for the DWI con-

viction should be merged with the greater offense of vehicular homicide to prevent the violation of Defendant's right against double jeopardy. *State v. Wiberg,* 107 N.M. 152, 158, 754 P.2d 529, 535 (Ct.App.1988). We conclude, however, that the DWI conviction, not merely the sentence, must be vacated. *See Pierce,* 110 N.M. at 86, 792 P.2d at 418 ("The rule of merger precludes an individual's conviction and sentence for a crime that is a lesser included offense of a greater charge upon which defendant has also been convicted.").

### D. Jury Instructions on Reckless Driving

{ 16} Defendant contends that the jury was given conflicting instructions on reckless driving. Instruction 35 read:

For you to find the Defendant guilty of Reckless Driving as charged in Count XIII, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The Defendant drove a motor vehicle;

2. The Defendant drove carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property.

3. This happened in New Mexico, on or about the 28th day of September, 1996.

Instruction 36 read:

For you to find that the defendant was driving recklessly, you must find that he drove with willful disregard of the rights or safety of others and at a speed or in a manner which endangered or was likely to endanger any person or property.

Defendant contends that the first instruction directed the jury to find that Defendant "drove carelessly and heedlessly" while the second instruction spoke in terms of a "willful disregard." Defendant thus argues that one instruction allowed the jury to convict Defendant on a lesser standard than the other.

{ 17} Initially, we note that Defendant did not preserve this issue for review.

To preserve error in the charge to the jury, an objection to the instruction must be made, sufficient to alert the mind of the trial court to the claimed error. *See State v. Villalobos,* 120 N.M. 694, 699, 905 P.2d 732, 737 (Ct.App. 1995) (requiring objection on tendered written instruction to preserve claim of error injury instruction). The record reflects that Defendant did not object to Instruction 36.

{ 18} Even assuming that Defendant preserved the issue and that it was error to give the second instruction, we conclude that the error was harmless. Instruction No. 35 tracks the Uniform Jury Instruction for reckless driving. UJI 14–4504 NMRA 1999. Instruction No. 36 is also a Uniform Jury Instruction, to be given when the vehicular homicide is caused by reckless driving. *See* UJI 14–241 NMRA 1999. Under the facts in this appeal, reckless driving was not an element of vehicular homicide. Thus, the two instructions given were unnecessary. We fail to see, however, the harm to Defendant in the instructions. Both instructions permitted a conviction only if there was a finding that Defendant drove with a willful disregard of the rights or safety of others and at a speed or in a manner that endangered or was likely to endanger the rights of others. Recognizing that we must read jury instructions together, *see State v. Munoz,* 1998–NMSC–041, ¶ 12, 126 N.M. 371, 970 P.2d 143, we believe that the two instructions were consistent. We do not believe that the jury could have been confused by the instructions because they stated the standard for reckless driving in the same language. We conclude there was no reversible error in the giving of these two instructions.

### E. Change of Venue

{ 19} Defendant argues that the trial court erred in changing venue in this case. Defendant requested a change of venue outside the judicial district. At the hearing on Defendant's motion, the trial court determined that a different county, Sierra County, within the same judicial district was free from exception and that venue would be changed to that county. At the same time, the trial court left open the possibility of a second change if, during voir dire, it ap-

peared that prospective jurors in Sierra County had made up their minds about the case.

{ 20} The trial court has wide discretion in ruling on motions for a change of venue, and we will not interfere without a showing of abuse of that discretion. *See State v. Chamberlain*, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991). The statute allowing for a change of venue states that a change will be made to a county free from exception, not to another judicial district. *See* NMSA 1978, § 38-3-3(A) (1965). Here, the trial court determined that another county was free from exception and changed venue on that basis. Defendant has failed to show that change was an abuse of discretion. A defendant can show an abuse of discretion if " 'the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant....' " *State v. McGuire*, 110 N.M. 304, 311, 795 P.2d 996, 1003 (1990) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

{ 21} Here, during voir dire, it became apparent that a number of the jury venire had heard of this case. Additional inquiry by the trial court and counsel established that those jurors had not prejudged the case and that they could be impartial and make a determination based solely on the evidence. On this basis alone, we cannot conclude that the change of venue to Sierra County was an abuse of discretion.

{ 22} Under this issue, Defendant also contends that counsel was ineffective in failing to move a second time for a change of venue during voir dire. The standard for effective assistance of counsel "is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent defense attorney." *State v. Hosteen*, 1996-NMCA-084, ¶ 5, 122 N.M. 228, 923 P.2d 595, *aff'd*, 1997-NMSC-063, 124 N.M. 402, 951 P.2d 619. Failure to make a motion that is unsupported by the record is not ineffective assistance. *See State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct.App.1990). Here, Defendant's claim that counsel should have renewed his motion for a change of venue during voir dire is unsupported by the record. Defendant is correct that a number of the jury venire had heard about the case. When questioned, however, most of the prospective jurors stated that they could be impartial and decide the case solely on the facts presented. Those who indicated they had prejudged the case were excused for cause. It thus does not appear to us from the record that the venire was prejudiced against Defendant or that an impartial jury could not be empaneled. *See State v. House*, 1999-NMSC-014, ¶ 51, 127 N.M. 151, 978 P.2d 967 (actual prejudice against a defendant exists where the jurors have fixed opinions impeding their impartiality). For these reasons, there was no basis for a second motion, and counsel was not ineffective for failing to make such a motion.

**F. Jury Instruction on Causation**

{ 23} Defendant contends that the jury instruction given by the trial court, pursuant to UJI 14-252 NMRA 1999, shifted the burden of proof to him and failed to adequately explain to the jury the concepts of foreseeability and independent intervening causation. The given instruction provided:

Negligent, or reckless, or intentional conduct on the part of another person which may have contributed to the cause of death does not relieve the defendant of responsibility for an act which also contributed to the cause of the death. However, if you find that the negligent, or reckless, or intentional conduct of another person was the only cause of death, then the defendant is relieved of all responsibility for the death of the deceased.

{ 24} We hold that Defendant failed to preserve this issue for appeal. Defendant never objected to the instruction on the basis that it shifted the burden of proof or that it failed to explain foreseeability. Thus, no ruling on these objections was invoked. *See State v. Jones*, 1996-NMCA-020, ¶ 31, 121 N.M. 383, 911 P.2d 891; Rule 12-216(A) NMRA 1999 ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked....").

{ 25} Defendant's argument at trial was that the instruction given was inadequate

because it only referred to the actions of a third person and did not recognize other conditions that might have caused the deaths. To satisfy Defendant's concerns, the trial court added several instructions regarding visual obstructions or other faults in the design of the intersection. Defendant accepted these instructions, objecting only that they were too restrictive in requiring that, in order to exonerate Defendant of liability, the jury would have to find that these defects were the sole cause of death. Insofar as Defendant maintains his objection to the restrictive nature of these instructions, we note that they generally follow UJI 14–252, which states that the only way a defendant can be completely exonerated from liability for a death is if actions of another were the sole cause of the death. *See* UJI 14–252; *State v. Simpson*, 116 N.M. 768, 772, 867 P.2d 1150, 1154 (1993) ("General principles of criminal law do not require that a defendant's conduct be the *sole* cause of the crime.... The conduct of other parties is relevant only if it is a superseding cause that negates the defendant's conduct." (Citation omitted.)).

{ 26} We hold that Defendant did not preserve any objection to the instructions on the basis of a shifting of the burden of proof or the proper standard for proximate cause.

## III. CONCLUSION

{ 27} We conclude there is no merit to Defendant's claims concerning the manner in which the trial was conducted. We therefore affirm the vehicular homicide convictions. We hold, however, that multiple punishments for the deaths of the four children were constitutionally impermissible. We also hold that the DWI conviction, in light of the vehicular homicide convictions, constituted invalid multiple punishment and should have merged with the vehicular homicide convictions. We affirm on all other issues. We remand to the trial court for (1) the entry of an order vacating the four convictions of child abuse resulting in death and the DWI conviction and (2) resentencing of Defendant under the remaining convictions.

{ 28} **IT IS SO ORDERED.**

MICHAEL D. BUSTAMANTE, J., concurs.

A. JOSEPH ALARID, Judge, specially concurring.

{ 29} While the opinion's discussion of the general/specific rule relies upon a fair reading of *Yarborough*, 1996–NMSC–068, ¶ 27, 122 N.M. 596, 930 P.2d 131, and moreover, is consistent with our recent decision in *State v. Guilez*, 1999–NMCA–127, ¶ 12, 128 N.M. 93, 990 P.2d 206 (reckless driving statute controls over child abuse statute where child injured through unlawful operation of a motor vehicle), I believe that were we presented with this issue as a matter of first impression it would be entirely supportable to hold that the vehicular homicide statute and the criminal child abuse statute are equally specific when applied under the facts of the present case. If one defines the relevant "subject matter" for the purposes of the general/specific rule to be the *instrumentality* by which a child's life is taken, then under *Yarborough*, the vehicular homicide statute contained in the Motor Vehicle Code arguably would be the more specific statute for purposes of the instant homicide prosecutions; however, if one defines the relevant subject matter to be a *class of victims—i.e.,* children, then as to the four minor victims in this case the criminal child abuse statute, with its more severe penalties, arguably is the more specific statute.

{ 30} In the present case, I find the general/specific rule to be an uncertain guide for determining whether the Legislature intended to funnel prosecutions for child abuse resulting in death through the Motor Vehicle Code merely because the children's deaths occurred as the result of the Defendant's operation of a motor vehicle. While I concur in the opinion of the court, I would welcome clarification of this issue from the Supreme Court or the Legislature.