The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published.  The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **August 21, 2023**

**No. A-1-CA-40129 and No. A-1-CA-40264**
**(consolidated for purpose of opinion)**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellant,

v.

**RHIANNON SALTWATER a/k/a**
**RHIANNON MARIE SALTWATER,**

  Defendant-Appellee.

and

**STATE OF NEW MEXICO,**

  Plaintiff-Appellant,

v.

**OCTAVIUS ATENE a/k/a**
**OCTAVIUS DAN ATENE,**

  Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli, Jr. and R. David Pederson, District Court Judges**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Attorney General (No. A-1-CA-40129)
Santa Fe, NM
Meryl Francolini, Assistant Attorney General (No. A-1-CA-40264)
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender (No. A-1-CA-40129)
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender (No. A-1-CA-40264)
Albuquerque, NM

for Appellees

# OPINION

**HENDERSON, Judge.**

{1}    In 2019, the Legislature enacted a new statute that makes it a misdemeanor to drive while intoxicated with a minor in the vehicle, so long as the minor did not suffer great bodily harm or death (DWI with a minor). NMSA 1978, § 66-8-102.5 (2019). In the two cases before us,[1] we are asked whether the general/specific statute rule requires a prosecutor to charge a defendant for DWI with a minor under Section 66-8-102.5 when that statute is violated, instead of child abuse by endangerment, contrary to NMSA 1978, § 30-6-1(D)(1) (2009). The district courts below concluded that it did, and dismissed child abuse by endangerment charges against Rhiannon Saltwater and Octavius Atene (collectively, Defendants), who were driving while intoxicated with minors in their vehicles. The State appeals, arguing that the district courts erred by misapplying the general/specific statute rule and impermissibly restricting prosecutorial charging discretion. We agree. The general/specific statute rule is inapplicable and does not require a prosecutor to charge DWI with a minor instead of child abuse by endangerment when the facts support both charges. The district courts thus improperly limited prosecutorial charging discretion by

---

[1]This opinion consolidates two appeals: Case Nos. A-1-CA-40129 and A-1-CA-40264. Because these cases each raise the same determinative issue, we consolidate the cases for decision. *See* Rule 12-317(B) NMRA.

dismissing the child abuse by endangerment charges. We reverse and remand for further proceedings consistent with this opinion.[2]

**BACKGROUND**

{2} Both cases on appeal share similar relevant facts. Saltwater, the first Defendant, was driving a vehicle with her seven-year-old daughter in the backseat. As Saltwater approached an intersection, the traffic light turned red and the truck in front of her stopped; Saltwater did not, and rear-ended the truck. Two officers who were nearby responded to the scene, and one noticed that Saltwater's daughter was crying. When the officer asked if she was okay, the daughter responded that she was not, so the officer called an ambulance. The daughter was later confirmed to have minor physical injuries as a result of the crash. Saltwater was given field sobriety tests, all of which indicated impairment, and she was arrested. Saltwater provided a breath sample less than an hour later that showed a blood alcohol concentration (BAC) of 0.22.

{3} Atene, the second Defendant, was driving a vehicle with his two daughters as passengers. One was five years old, and the other was one-month-old. While traveling on a state highway, Atene crashed into another vehicle. Deputies arrived

---

[2]Because we hold that the general/specific statute rule does not require the prosecutor to charge DWI with a minor instead of child abuse, we do not reach the State's argument in Atene's case that the child abuse charge was premised on failure to restrain, not driving while intoxicated.

on the scene to find a third-party witness attending to Atene's daughters. The five-year-old had blood running from her nose, a cut and scratches on her face, and blood on her shirt. The one-month-old was "red and crying," having been found "stuck" under a car seat by the witness. Atene was also injured and transported to a hospital, where he later agreed to have his blood drawn for testing. Atene's BAC was 0.19 after the crash.

{4}    As relevant here, Defendants were charged by criminal information with child abuse by endangerment. Prior to trial, Defendants moved to dismiss those charges pursuant to *State v. Foulenfont*, 1995-NMCA-028, ¶ 6, 119 N.M. 788, 895 P.2d 1329, arguing that the newly-enacted Section 66-8-102.5 displaced the prosecutors' charging discretion under the general/specific statute rule. *See Foulenfont*, 1995-NMCA-028, ¶ 6 (permitting dismissal where the facts are undisputed and the case raises a purely legal issue). The district courts agreed with Defendants, dismissed the child abuse by endangerment charges, and amended the criminal information to charge DWI with a minor.[3] These appeals followed.

---

[3]The State raises an argument concerning Saltwater's right to be free from double jeopardy; however, the district court did not base its ruling on double jeopardy, and Saltwater concedes "that double jeopardy is not yet at issue for purposes of this appeal." Therefore, we do not address this issue further.

**DISCUSSION**

{5}     "The general/specific statute rule is a tool in statutory construction." *State v. Santillanes*, 2001-NMSC-018, ¶ 7, 130 N.M. 464, 27 P.3d 456. The general/specific statute rule requires in relevant part that where a statute addresses a subject in general terms and another statute addresses the same subject in a more detailed manner, the latter will control to the extent they conflict. *See State v. Cleve*, 1999-NMSC-017, ¶ 17, 127 N.M. 240, 980 P.2d 23. "[I]n the particular context of criminal law, the general/specific statute rule assists courts in determining whether the Legislature intended to limit the discretion of the prosecutor in charging under one statute instead of another for the commission of a particular offense." *Santillanes*, 2001-NMSC-018, ¶ 10. Because it raises questions of statutory construction, we review application of the general/specific statute rule de novo. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622.

{6}     Due to its track record of being "frequently difficult for courts to apply," the general/specific statute rule has been clarified and rephrased a number of times. *Cleve*, 1999-NMSC-017, ¶ 21; *see State v. Guilez*, 2000-NMSC-020, ¶ 8, 129 N.M. 240, 4 P.3d 1231 (recognizing and naming two "distinct approaches" to the general/specific statute rule, the "quasi-double-jeopardy analysis" and the "preemption analysis"), *abrogated by Santillanes*, 2001-NMSC-018, ¶ 11 (rejecting the approach in *Guilez* and stating that those "labels inaccurately suggest that there

4

must be two independent analyses undertaken in every case to determine whether the general/specific statute rule applies"). The sum of that progression is a tiered analysis, focused on legislative intent that ultimately determines whether the general/specific statute rule applies. *Santillanes*, 2001-NMSC-018, ¶¶ 11-17. For criminal statutes, the first question is whether the Legislature intended to create separately punishable offenses between the two relevant crimes, even if the defendant was only charged with or convicted of one of the two crimes at issue. *Id.* ¶ 13. We begin with this question "because a legislative intent to create multiple punishments necessarily implies that the Legislature also intended to leave intact the prosecutor's charging discretion." *Id.* (internal quotation marks and citation omitted). If the Legislature did not intend to create separately punishable offenses we proceed to the second question, whether the Legislature intended to limit prosecutorial discretion regarding charging decisions to the more specific statute. *See id.* ¶ 16. Both questions are answered using the same analytical framework. *Id.*

{7}     To start, courts must compare the elements of the crimes described in the general and specific statutes. *Id.* ¶ 23. If the elements are identical, both questions are answered at once: the Legislature did not intend to create separately punishable offenses, and as a corollary intended to limit prosecutorial discretion to the more specific statute, "'absent a clear expression of legislative intent to the contrary.'" *Id.* ¶ 16 (quoting *Cleve*, 1999-NMSC-017, ¶ 26). However, if the elements are different,

then "there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact." *Id.* To determine if that presumption stands, "courts should resort to other indicia of legislative intent," such as "the language, purpose, and histories of the statutes," and "whether the violation of one statute will normally result in a violation of the other." *Id.* (internal quotation marks and citation omitted). In furthering that intent, courts may limit prosecutorial discretion to the specific statute even in the face of differing elements. *See id.* ¶ 18.

{8}     The foregoing analysis is qualified by several broad concerns. Our Supreme Court has cautioned against applying the general/specific statute rule in "a rigid, mechanistic fashion." *Id.* ¶ 17. The rule "is merely a tool of statutory interpretation and is not an end to itself." *Id.* (internal quotation marks and citation omitted). Furthermore, "[i]n the specific context of comparing two criminal statutes, . . . courts should apply the general/specific statute rule guardedly to the extent that it operates to restrict the charging discretion of the prosecutor." *Id.* ¶ 21. There must be "clear evidence" that the Legislature intended to limit a prosecutor's charging discretion. *Id.* Finally, "[i]n ascertaining legislative intent, courts should balance the rule of lenity, which favors applying the general/specific statute rule in cases of ambiguity, with the judiciary's longstanding deference to prosecutorial discretion, which favors

the exercise of caution before applying the general/specific statute rule." *Cleve*, 1999-NMSC-017, ¶ 26.

## I.      Elements of the Offenses

{9}      Because of its double jeopardy roots, the general/specific statute rule requires us to compare the elements of two statutes pursuant to *Blockburger v. United States*, 284 U.S. 299, 303-04 (1932). *See Santillanes*, 2001-NMSC-018, ¶ 16; *see also id.* ¶ 13 (noting the "close relationship between the general/specific statute rule and the principle of double jeopardy"). Under *Blockburger*, we ask "'whether each provision requires proof of an additional fact which the other does not.'" *Santillanes,* 2001-NMSC-018, ¶ 16 (quoting *Blockburger*, 284 U.S. at 304).

{10}      The elements plainly differ under a comparison between the two statutes at issue in this case. Child abuse by endangerment "consists of a person knowingly, intentionally or [recklessly],[4] and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health." Section 30-6-1(D)(1). Our Supreme Court has held, "[T]o find that the accused acted with the requisite mens rea, the jury . . . must find that [the] defendant's conduct created a *substantial and foreseeable risk* of harm." *State v. Chavez*, 2009-NMSC-

_____

[4]We replace the statute's reference to negligence with recklessness in line with our Supreme Court's opinion in *State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 ("To avoid the confusion that has plagued this area of the law, we believe that what has long been called 'criminally negligent child abuse' should hereafter be labeled 'reckless child abuse' without any reference to negligence.").

7

035, ¶ 22, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted). In contrast, DWI with a minor consists of a violation of the general DWI statute, NMSA 1978, § 66-8-102 (2016), "when a minor is in the vehicle and when the minor does not suffer great bodily harm or death." Section 66-8-102.5(A). Unlike child abuse by endangerment, DWI with a minor requires proof that the defendant was driving while under the influence of drugs or alcohol. *See* § 66-8-102. And unlike DWI with a minor, child abuse by endangerment requires proof of a culpable mental state and sufficient risk of harm to the child. Additionally, although both crimes require proof of a specific age, DWI with a minor only applies to children under thirteen while child abuse covers any child under eighteen. *Compare* § 66-8-102.5(C), *with* § 30-6-1(A)(1). Thus, strictly speaking, the elements of the two statutes differ, creating a presumption that the Legislature did not intend to limit charging discretion to DWI with a minor. *See Santillanes*, 2001-NMSC-018, ¶ 16; *see also State v. Ibn Omar-Muhammad*, 1985-NMSC-006, ¶ 22, 102 N.M. 274, 694 P.2d 922 (concluding that the Legislature intended to leave prosecutorial discretion intact when the vehicular homicide statute contained no requirement that the defendant "know of any risk involved in [their] actions," in contrast to depraved mind murder).

{11}     Recognizing the side-by-side differences between the statutes, Saltwater urges us to apply the *Blockburger* test as modified by our Supreme Court in *State v.*

*Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024. When the modified *Blockburger* test applies, we compare the elements of the two statutes based on "the state's legal theory of the particular case as to how the statutes were violated." *State v. Begaye*, ___-NMSC-___, ¶ 17, ___ P.3d ___ (S-1-SC-38797, Jan. 12, 2023). The test applies to cases in which a defendant is convicted for one act under different criminal statutes and "where the statutes at issue are vague and unspecific or are written in the alternative." *Id.* ¶¶ 12, 17. Saltwater argues that we should also use the modified *Blockburger* test in our general/specific statute rule analysis because the rule "should be applied in a flexible manner," *see Santillanes*, 2001-NMSC-018, ¶ 21, and the child abuse statute, if taken literally, "could be read broadly to permit prosecution for any conduct." *See Chavez*, 2009-NMSC-035, ¶ 16. Under a modified *Blockburger* approach, Saltwater asserts that the elements of child abuse by endangerment are subsumed into DWI with a minor, because driving while intoxicated is reckless behavior that creates a substantial and foreseeable risk of harm to a minor passenger. *See State v. Orquiz*, 2012-NMCA-080, ¶ 15, 284 P.3d 418 ("[J]ust as the driver's actions strictly constitute DWI, even absent any additional 'plus factor,' so do the driver's actions constitute child abuse by endangerment.").

{12}     Saltwater misunderstands how the State's charging theory impacts our analysis. New Mexico case law has perhaps been less than clear about what role the

state's charging theory has in determining if the general/specific statute rule applies. Often, it appears that appellate courts engage only in a strict elements comparison. For example, in *Ibn Omar-Muhammad*, the defendant was convicted of first-degree depraved mind murder after killing the victim with their car while fleeing from police. 1985-NMSC-006, ¶¶ 1, 10. The defendant appealed, arguing that they should have been charged with vehicular homicide under the general/specific statute rule. *Id.* ¶ 16. Our Supreme Court rejected the argument based on differences between the mental states required to convict for depraved mind murder and vehicular homicide:

> [T]he mental state required for vehicular homicide (conscious wrongdoing) requires only that a defendant purposefully engage in an unlawful act. This concept does not require that a defendant know of any risk involved in [their] actions. However, for a defendant to be convicted of depraved mind murder in the first degree, it must be proven that [they have] a subjective knowledge of the risk involved in [their] action. This element of subjective knowledge under depraved mind murder requires proof of an additional fact which is not required under the vehicular homicide statute.

*Id.* ¶ 22. In so concluding, the Court did not focus on the specific conduct alleged to have amounted to depraved mind murder and whether the Legislature intended to punish that conduct under the vehicular homicide statute. *See id.*

{13}     However, in *Cleve*, our Supreme Court expressly relied on the state's charging theory when comparing elements of unlawful hunting and cruelty to animals. 1999-NMSC-017, ¶ 30. Unlike the cases at hand, the defendant had been convicted under both statutes at issue. *See id.* ¶¶ 4-5. Both the unlawful hunting and cruelty to animals

10

statutes in force at the time provided numerous alternative bases for violations. *See* NMSA 1978, § 30-18-1 (1999, amended 2007); NMSA 1978, § 17-2-7 (1979). In its analysis, the Court noted that the state sought a conviction for unlawful hunting and cruelty to animals based on the defendant snaring and killing two deer in violation of state regulations. *Cleve*, 1999-NMSC-017, ¶ 30. The Court accordingly limited its analysis by comparing only the applicable statutory elements, namely taking a game animal in a manner not permitted by regulations and torturing or cruelly killing an animal. *See id.* (noting that when "offenses are defined by statutes providing several alternatives," courts "focus on the legal theory of the case and disregard any inapplicable statutory elements" (internal quotation marks and citation omitted)). In the end, "the unique elements of torture or cruelty" and a violation of state regulation presented a difference in the two statutes creating a presumption that the Legislature intended separately punishable offenses. *Id.*

{14}     This Court took the same approach in *State v. Santillanes* regarding child abuse and vehicular homicide. 2000-NMCA-017, ¶ 7, 128 N.M. 752, 998 P.2d 1203, *rev'd on other grounds*, 2001-NMSC-018, ¶¶ 1, 24-26. As it does now, the child abuse statute applicable at the time defined the crime in the alternative. *See* NMSA 1978, 30-6-1(C) (1989, amended 2009). The defendant had been charged, and convicted, of vehicular homicide and child abuse by endangerment resulting in death. *Santillanes*, 2000-NMCA-017, ¶ 3. The defendant had been drinking while

11

driving with their three children, girlfriend, and her niece in the vehicle when they crashed into an oncoming truck, killing everyone but the defendant. *Id.* ¶ 2. Like our Supreme Court in *Cleve*, this Court narrowed the elements of child abuse to those relevant to the case. *See id.* ¶ 7. In so doing, we concluded that "the statutes stand independently of one another, and neither subsumes the other because the charge of child abuse resulting in death requires only the death of a child and vehicular homicide requires that the death occur as a result of a defendant driving a vehicle while intoxicated." *Id.* Even though it reversed on other grounds, our Supreme Court "agree[d] with [this Court] that under the *Blockburger* test the elements of the crimes differ[ed]," and proceeded to apply the factors outlined in *Cleve* to determine that the Legislature did not intend to limit the discretion of the prosecutor in charging an individual who caused the death of a child in a manner that otherwise meets the elements of both crimes, when the crime occurred during the operation of a vehicle. *Santillanes*, 2001-NMSC-018, ¶ 24.

{15}     In examining the elements of the child abuse by endangerment and DWI with a minor in this case, we have done no more than is required by *Santillanes* and *Cleve*. Neither of those cases, in narrowing the statutes at issue to their relevant elements, went as far as Saltwater suggests we do now. Nor do we think it necessary or appropriate to do so. First, Saltwater's approach, which asks us to consider the State's proof under both statutes rather than whether both statutes require proof that

the other does not, would turn our elements comparison into one focusing on whether the conduct was unitary. "However, for purposes of the general/specific statute rule, we do not ask whether the conduct used to convict a defendant of two crimes is unitary." *Santillanes*, 2001-NMSC-018, ¶ 14. Second, unlike the defendants in *Santillanes* and *Cleve*, Defendants have neither been convicted nor charged with both statutes at issue. Our analysis is necessarily "somewhat hypothetical" as a result—we cannot compare the state's charging theory between two statutes. *See Santillanes*, 2001-NMSC-028, ¶ 14. It is difficult, then, to accept the level of granularity Saltwater suggests is appropriate, because we simply do not know how the State would charge Defendants if it charged them with both DWI with a minor and child abuse by endangerment. Attempting to do so would also unduly restrict our ultimate goal, which is determining whether the Legislature intended to limit charging discretion to a specific statute *in all cases* where the elements of the specific statute are met.

{16}    In rejecting Saltwater's argument, we caution against relying on this conclusion in the event a defendant is convicted of both child abuse by endangerment and DWI with a minor. "[W]hile the double jeopardy inquiry focuses on whether the Legislature intended to limit a court's discretion in imposing multiple punishments, the general/specific statute rule determines whether the Legislature intended to limit the discretion of the prosecutor in its selection of charges." *Cleve*, 1999-NMSC-017,

13

¶ 25. With that focus in mind, we acknowledge that Saltwater's suggested approach may be better applicable to a circumstance that entails two convictions after the State's theory has been elaborated on in more detail. *Cf. Santillanes*, 2001-NMSC-018, ¶ 14 ("[I]f a defendant is convicted of two crimes and raises claims of both double jeopardy and the general/specific statute rule, it is important to analyze each claim independently."). However, for purposes of our general/specific statute rule analysis, based on our comparison above, the elements of child abuse by endangerment and DWI with a minor are different. Like the statutes in *Ibn Omar-Muhamad*, child abuse by endangerment requires a particular mental state that is absent from the DWI with a minor statute. 1985-NMSC-006, ¶ 22. And like this Court acknowledged in *Santillanes*, child abuse by endangerment does not require proof that the defendant was driving while intoxicated. *See* 2000-NMCA-017, ¶ 7. Those differences give rise to a presumption that the Legislature intended to leave prosecutorial discretion to choose either charge intact. *See Santillanes*, 2001-NMSC-018, ¶ 16.

## II.    Other Indicia of Legislative Intent

{17}    We move on now to determine if the presumption in favor of prosecutorial discretion stands in the face of other indicators of legislative intent. We first look to the language, histories, and purpose of the child abuse and DWI with a minor statutes. *See id.* Section 66-8-102.5 contains no language expressly limiting use of

14

the child abuse statute when a person drives while intoxicated with a minor in the vehicle, despite three appellate decisions declining to require prosecution under statutes addressing intoxicated drivers. *See Santillanes*, 2001-NMSC-018, ¶ 27; *Guilez*, 2000-NMSC-020, ¶ 24; *State v. Castañeda*, 2001-NMCA-052, ¶ 9, 130 N.M. 679, 30 P.3d 368. We "presume[] that the Legislature is aware of existing case law and acts with knowledge of it." *State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205, 174 P.3d 988. Indeed, the Legislature was mindful of Section 66-8-102.5's interaction with other statutes, specifically permitting punishment in addition to that under the general DWI statute, Section 66-8-102. *See* § 66-8-102.5(B). If the Legislature intended Section 66-8-102.5 to be the specific statute charged in every instance of DWI with a minor, it could have stated so explicitly. We disagree with Saltwater's argument that the plain language of Section 66-8-102.5 supports an inference that the Legislature intended to restrict charging discretion simply because the facts of this case "fit" what is being described in the statute. The notion that a defendant's conduct fits within one statute more specifically than another is embodied in every argument under the general/specific statute rule, but that fact is insufficient on its own to demonstrate legislative intent to restrict charging discretion—that is why we engage in the multistep analysis from *Santillanes*. 2001-NMSC-018, ¶¶ 11-17.

{18}     However, we do agree with Defendants that the child abuse statute and Section 66-8-102.5 share a similar purpose and histories. The child abuse statute "is designed to give greater protection to children than adults because children are more vulnerable than adults and are under the care and responsibility of adults." *Santillanes*, 2001-NMSC-018, ¶ 24 (internal quotation marks and citation omitted). In *Castañeda*, this Court contrasted that purpose with the general DWI statute, and concluded that "the DWI statute protects the general public (including children) from intoxicated drivers." 2001-NMCA-052, ¶ 10. Although the State suggests that *Castañeda* should still control, we are not addressing the statute we addressed in *Castañeda*, but instead a statute that focuses on a smaller class of individuals. In addition to a violation of the general DWI statute, Section 66-8-102.5 requires that there be a minor under thirteen years old in the vehicle. This element narrows the general DWI statute to protect specifically younger minors, rather than adults, similar to the child abuse statute. *See Santillanes*, 2001-NMSC-018, ¶ 24. In so doing, the Legislature continued the spirit of the child abuse statute through to Section 66-8-102.5. "[T]he history of the child abuse statute clearly shows the Legislature's intent to protect children from abuse and compels the conclusion that the Legislature has expanded protection for children." *Santillanes*, 2001-NMSC-018, ¶ 24 (alterations, internal quotation marks, and citation omitted). Despite having no statutory history of its own—the statute has yet to be amended since its

16

passing—Section 66-8-102.5 similarly represents an expansion of protection for children against abuse at the hands of adults.

{19} We next consider "whether the violation of one statute will normally result in a violation of the other." *Santillanes*, 2001-NMSC-028, ¶ 16 (internal quotation marks and citation omitted). Regarding the child abuse statute and general DWI statute, we have previously held that they "criminalize some of the same conduct." *Castañeda*, 2001-NMCA-052, ¶ 8. So is the case with the child abuse statute and Section 66-8-102.5. Indeed, this Court has held that driving while intoxicated with a minor may result in a conviction for child abuse "even absent any additional 'plus factor.'" *Orquiz*, 2012-NMCA-080, ¶ 15. But that holding does not dictate the result here, because despite the similarities, there are important differences in the conduct targeted by the statutes generally. It is beyond dispute that the child abuse statute criminalizes significantly more conduct than driving while intoxicated with a minor. There are also instances where Section 66-8-102.5 will be violated when the child abuse statute is not. For example, the holding in *Orquiz* was limited to cases of "actual driving." 2012-NMCA-080, ¶¶ 4, 10. "[O]ur case law holds that a conviction for child abuse by endangerment cannot be sustained when premised upon a DWI conviction that is based on the driver being in actual physical control of a *non-moving vehicle* with a child occupant." *Id.* ¶ 10; *see, e.g.*, *State v. Etsitty*, 2012-NMCA-012, ¶¶ 2, 13, 270 P.3d 1277 (reversing a conviction for child abuse based

17

on the defendant being intoxicated while in the driver's seat of a parked truck with his child present). However, a DWI based on actual physical control with a child occupant *will* result in a violation of DWI with a minor, because it incorporates the general DWI statue, not simply instances of actual driving. *See* § 66-8-102.5 (requiring "a violation of Section 66-8-102 . . . when a minor is in the vehicle and when the minor does not suffer great bodily harm or death"). Despite the fact that the child abuse statute and Section 66-8-102.5 criminalize some of the same conduct, there are important instances where they do not, indicating that the Legislature intended the prosecutor be able to choose which to charge depending on the circumstances.

{20}     We recognize both the State and Defendants suggest for our consideration what they consider to be other indicators of legislative intent. The State posits that we can glean the Legislature's intent from statements made by Section 66-8-102.5's sponsor to the local news and in a hearing while the statute was being voted on. Defendants reject this approach and turn our attention to video recordings of hearings on Section 66-8-102.5 during the legislative session and drafts of the statute. We understand these efforts, given the increased accessibility of individual legislators' prior statements in a state that still has "'no state-sponsored system of recording the legislative history of particular enactments.'" *State v. Vest*, 2021-NMSC-020, ¶ 33, 488 P.3d 626 (quoting *Regents of Univ. of N.M. v. N.M. Fed'n of*

18

*Tchrs.*, 1998-NMSC-020, ¶ 30, 125 N.M. 401, 962 P.2d 1236). However, New Mexico case law is firm in rejecting attempts to consider materials like the parties put forward to determine legislative intent. *See id.* ¶ 33 ("There are countless reasons why language may be added or deleted during the legislative drafting process and, unlike the United States Congress, our Legislature does not keep a record of floor debates or committee hearings."); *Regents of Univ. of N.M.*, 1998-NMSC-020, ¶ 32 ("The statements of legislators, especially after the passage of legislation, cannot be considered competent evidence in establishing what the Legislature intended in enacting a measure."); *Whitely v. N.M. State Pers. Bd.*, 1993-NMSC-019, ¶ 16, 115 N.M. 308, 850 P.2d 1011 ("The views of individual legislators are not controlling in judicial interpretation of statutes under the circumstances present here because the sovereign authority of the [L]egislature is instilled in the representative body, not its individual members."); *Baker v. Hedstrom*, 2012-NMCA-073, ¶ 28, 284 P.3d 400 ("[G]enerally, not even statements of legislators are considered competent evidence in determining legislative intent."). Given our case law, we will not consider the legislative history the parties ask us to, and instead rely on our analysis of Section 66-8-102.5 as finally passed.

{21}     While the child abuse statute and DWI with a minor statute share similar purposes and histories, there are differences in the conduct each criminalizes, and the plain language of Section 66-8-102.5 provides no indication that the Legislature

19

intended it to always be charged by a prosecutor instead of child abuse by endangerment. "[I]n applying the general/specific statute rule, courts must be wary not to infringe unnecessarily on the broad charging authority of district attorneys," and for that reason our Supreme Court requires "clear evidence of an intent by the Legislature to limit prosecutorial discretion." *Santillanes*, 2001-NMSC-018, ¶ 21. The elements of child abuse by endangerment and DWI with a minor differ, and other indicia of legislative intent fall short of the clear evidence required by *Santillanes* to require a prosecutor to charge the latter. Accordingly, we hold that the general/specific statute rule does not apply in the cases before us, and the prosecutors retained the discretion to charge Defendants with child abuse by endangerment.

**CONCLUSION**

{22}    For the foregoing reasons, we reverse and remand to the district court for further proceedings consistent with this opinion.

{23}    **IT IS SO ORDERED.**


_____
                                            **SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**JACQUELINE R. MEDINA, Judge**

20